HINES v. THE STATE.

The evidence is sufficient to sustain a conviction of murder.
June 2, 1890.

Murder. Criminal law. Evidence. Verdict. Be-Judge GUERRY. Quitman superior court. September term, 1889.

Chloe Hines was indicted for the murder of Mag. Smith, and was convicted, the jury recommending her imprisonment for life. She moved for a new trial on the grounds that the verdict was contrary to law and evidence; and to the overruling of the motion she excepted. The evidence tended to show the following:

At night just after the close of church services, Maggie Smith came out of the church door and said to defendant that she wanted to know something about those stories defendant had been telling on her. Defendant told her to go on and not to start any row at the church.

They had some further conversation not shown by the evidence, the witness who heard the first words being called off by one who said he wanted to see her on business; she went to him, leaving defendant and Maggie talking. When she returned and they started to go home, Maggie inquired if her husband was there, and some one replied no. The witness said, " Come on and let's go home; nothing is going to hurt us." She and Maggie started off and so did the defendant, in the same direction. Maggie and defendant continued to talk until they had walked a short distance from the church, when defendant turned aside and started across the street towards her own home. Maggie then said, " You are no good any way; you are nothing but a fuss-maker; you keep up a fuss in this town all the time," to which the defendant replied, " I won't take that," and ran back to Maggie, crossing a deep gully. What else had been said during the quarrel does not appear; but the witness above mentioned testified that Maggie had said nothing else to make the defendant mad. When the witness saw defendant returning, she ran back towards the church, told Maggie also to run, and cried out not to let those women fight. Maggie did start back and was going towards the church when defendant overtook her. It was a dark night and no moon was shining; but the first witness says she looked back and saw defendant kick Maggie. Another witness (who was nearer to them and had her attention directed to to them by defendant's voice saying something loudly but not understood by the witness) testified that defendant hit Maggie the first lick in the back, and as Maggie turned as if to hit back, defendant hit her again in the breast, upon which she fell to the ground and said (calling the name of the first witness), " You see Chloe Hines has stabbed me to death." These were the only licks seen given, but there is some indication

that they were preceded by fighting or scuffling. The defendant ran off towards her home. No knife was seen in her hands nor in Maggie's, but afterwards a shut knife with no blood on it, with a blade three inches long, was picked up by the physician called to see Maggie, on the ground at the place where she was stabbed. This was after he had examined her and found her dead, the stab in the breast having entered the base of the heart. It was at his suggestion that the knife was looked for, and some one said, " Here is a knife," and he picked it up at the place where they said Maggie fell. He testified that a rusty blade stabbed into the body would probably have blood-stains left on it; but he found no blood on this knife at all, though the blade was a little rusty. He saw the defendant about three quarters of an hour afterwards, and found a wound in her breast which he did not probe, and one in her side which he did probe and found to be about an inch deep. One of her hands was marked with a knife across her fingers. The wound in her side was more towards the front than the back, and went straight in, the knife making it coming from back to front. She had been found in a cotton-patch in the edge of the town, two or three hundred yards from the house where she lived, lying down. Her wounds were bleeding freely then; the blood on her showed plainly fifteen feet away. Fifteen or twenty minutes before this, she was passed by the man who made the arrest; he having been summoned for this purpose. He did not know who it was then, and saw no blood on her clothes, though he was looking for her, and they passed within five to eight feet from each other. He thought if she had had blood on her, it would have attracted his attention. She had on a light spotted muslin dress. The first witness above referred to testified that defendant went with her and two Hamiltons to the church

that night; and that when defendant and Maggie were fighting, the Hamiltons, who were going home, were the nearest ones to them, they being about thirty feet distant. The witness who saw the stabs given testified that she did not see the commencement of the difficulty, but when she saw defendant and Maggie, the latter was running and defendant running behind her; that defendant struck her in the back, and Maggie wheeled as if she wanted to strike back, but defendant struck her again too quickly for her to do so; and that if defendant was cut by Maggie, it was done before witness saw them together. The physician testified that the wound in Maggie's back was probably made first, because there was no chance for her to live but a few seconds after she was stabbed in the heart.

HARRISON & WHITAKER and J. W. LEE, for plaintiff in error.

CLIFFORD ANDERSON, attorney-general, by HARRISON & PEEPLES, and J. M. GRIGGS, solicitor-general, for the State.

SIMMONS, Justice.

Chloe Hines was indicted, tried and convicted of the offence of murder. The jury found her guilty, and recommended that she be imprisoned in the penitentiary for life. She made a motion for a new trial, upon the grounds that the verdict was contrary to the evidence, without evidence to support it, and contrary to law. The motion was overruled, and she excepted. The only ground insisted upon in the argument before us for a reversal of the judgment of the court below was, that the verdict was contrary to the evidence. We have carefully read the whole of this evidence as sent up in this record, and we think it is sufficient to sustain the finding of the jury. The judgment of the court below overruling the motion for a new trial is
                    *Affirmed.*